James L. Buchal, OSB No. 921618
E-mail: jbuchal@mbllp.com
MURPHY & BUCHAL LLP
P.O. Box 86620
Portland, OR 97286
Tel: 503-227-1011
Fax: 503-573-1939
*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DANIEL AZZOPARDI; and SPORTSMAN'S WAREHOUSE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ELLEN ROSENBLUM, in her official capacity as Attorney General of the State of Oregon; TERRI DAVIE, in her official capacity as Superintendent of the Oregon State Police, <br><br> Defendants. | Case No. <br><br> **PLAINTIFFS' EMERGENCY MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM** <br><br> **Request for Oral Argument** <br><br> **Telephonic/Videoconferencing Argument Requested** |

**Motions**

Pursuant to Federal Rule of Civil Procedure 65 and Local Rules 7-4 and 65,

Plaintiffs Daniel Azzopardi and Sportsman's Warehouse, Inc. respectfully request that

this court enter a temporary restraining order and preliminary injunction prohibiting

Defendants and their officers, agents, servants, employees, and all persons in concert or

participation with them who receive notice or the order and injunction from enforcing the

provisions of Oregon Ballot Measure 114 which require individuals to present a permit to

purchase in order to lawfully acquire firearms, unless and until permits are being issued consistent with the terms of the Measure. In support of this motion, Plaintiffs submit the attached memorandum of law and the supporting Declarations filed herewith.

## Memorandum of Law

## INTRODUCTION

The Second Amendment right to "keep and bear Arms" is "not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2156 (2022) (quotation omitted). And a law that entirely blocks exercise of an activity protected by the Second Amendment is unconstitutional and must be enjoined.

That is the situation here. Oregon has passed a new law that will require, beginning December 8, 2022, all firearms purchasers in the state to present a "permit to purchase" firearms; as envisioned by the law, the process to acquire a permit to purchase can take up to 30 days to complete. But today, less than a week from the day the requirement goes live, no one in Oregon has a permit because there is no infrastructure to support the processing of permit applications—there is not even an application yet; the Oregon State Police has not created it.

With no way to apply for a permit, and facing criminal prosecution for purchasing firearms without a permit, Oregonians will find themselves on December 8th with no legal way to acquire a firearm. Plaintiffs are seeking a temporary restraining order and preliminary injunction to prevent the law from going into effect until it is possible for ordinary, law-abiding citizens to acquire a purchase permit (and therefore, to acquire a firearm). In the absence of an order from this Court, the Second Amendment rights of

Plaintiffs (and of every other person living in Oregon) will be effectively extinguished. There is no way such a law can be justified under the framework outlined in *Bruen*, so Plaintiffs are certain to succeed on the merits of their claim, and the remaining preliminary injunction and temporary restraining order factors all weigh in favor of granting Plaintiffs emergency relief.

## BACKGROUND

On November 8, 2022, Oregon voters approved Ballot Measure 114 which, among other things, requires that "before a firearm is delivered to a purchaser" by a licensed gun dealer, a purchaser must "present to the gun dealer . . . a valid permit issued under section 4 of this 2022 Act." Measure 114 § 6(2)(a) (attached to the Complaint as Exhibit A). Permits are also required for private transfers and all transfers at "gun shows." *Id.* §§ 7(3)(a), 9(1)(a)(A).

This permit-to-purchase requirement goes into effect on December 8, 2022. *Oregon State Police Firearms Instant Check System (FICS) Update – Oregon*, https://bit.ly/3TZYw7Y (Nov. 16, 2022). At that point, *any* sort of purchase of a firearm in Oregon will be illegal unless an individual has lawfully acquired a permit first. But acquiring a permit requires that such permits exist, and that it be possible to get one. It currently is not possible, and there is no indication it will be possible on December 8th.

Under Measure 114, to acquire a permit-to-purchase, individuals must apply to their local police chief or county sheriff (or a "permitting agent" designated by one of those officials). Ex. A, § 4(1)(a). The application must be made in person, and requires an individual to be fingerprinted, photographed, submit to a background check, and provide "additional information determined necessary by [State Police] rules," *id.*

§ 4(1)(b)(D), (1)(c) & (1)(e).  Applicants must also complete an approved "firearm safety course" which must include an "[i]n-person demonstration of the applicant's ability to lock, load, unload, fire and store a firearm before an instructor certified by a law enforcement agency." *Id.* § 5(8)(c)(C).  If these criteria are met, the permitting agent is required to issue a permit within 30 days after receiving an application.  *Id.* § 4(3)(a).

The forms on which an application are to be made, as well as the forms used by permitting agents to grant permits, must be created by the State Police, which also has authority to "adopt rules to carry out the provisions of this section."  *Id.* § 4(4)(a) & (9).

To date, the State Police has not issued application forms, it has not issued forms on which permits may be granted, and it has promulgated *no* rules to carry these provisions into effect.  There has, as of yet, been no indication of what "additional information," if any, will be required from applicants—so even the requirements to receive a permit have not been decided—less than a week before this law is set to go into effect.

The training courses also pose a significant barrier to implementing the permit-to-purchase requirement.  There has been no guidance on who will qualify as an instructor "certified by a law enforcement agency" to provide the course, and there is no indication of how a person who does not yet own a firearm will be able to complete a course requiring a live-fire demonstration *with* a firearm.  *Id.* § 4(8)(c)(D).

Part of the problem here is that at the time Measure 114 was passed, many assumed there would be a longer runway to the law going into effect to allow things to be ironed out.  Maxine Bernstein, *Oregon gun sales skyrocket after gun control Measure 114 passes*, THE OREGONIAN/OREGONLIVE (Nov. 16, 2022), *available at*

https://bit.ly/3VJrNVS ("Measure 114's drafters said they were led to believe the effective date would be 30 days from Dec. 15, the deadline for the vote to be certified."). Things are so uncertain, that even the Measure's *supporters* have stated "they anticipate a legislative workgroup will be formed to clear up *details that still need to be addressed*" in the law and have expressed "hope the governor could step in to delay the date the new law takes effect or the date that certain provisions can be implemented" because they "want it to be a fair and equitable system and to be as clear as possible." *Id.* (emphasis added). The Governor's office, for its part, finds its hands tied and has said it "doesn't have the authority to extend the date the measure takes effect." *Id.*

And so, Oregon is headed quickly to a situation that no one—even the drafters of Measure 114—intended or wanted. On December 8, it will become *de facto* illegal to purchase firearms anywhere in the state of Oregon, effectively extinguishing Second Amendment rights all across the state.

Plaintiff Daniel Azzopardi is a natural person and a citizen of Yamhill County, Oregon. (Declaration of Daniel Azzopardi ("Azzopardi Decl.") ¶ 2). He is not disqualified from lawfully owning firearms or ammunition. (*Id.* ¶ 3). Mr. Azzopardi regularly purchase firearms throughout the year and desires and intends to continue doing so. (Id. ¶ 4). When Oregon's "permit-to-purchase" requirement goes into effect on December 8, 2022, he will no longer be able to legally purchase firearms without the new statutorily mandated "permit-to-purchase." (*Id.* ¶ 5). In the intervening time between the passage of Measure 114 and its scheduled enactment, Azzopardi has attempted to make firearms purchases but has found that dramatic increases demand have caused serious background check delays and inventory unavailability that have made his purchases

impossible. (*Id.* ¶ 6). Azzopardi desires and intends to purchase additional firearms after December 8. (*Id.* ¶ 7). Because Oregon has not established the relevant infrastructure, application process or approved training requirement curriculum to apply for and receive a purchase permit, Azzopardi will be categorically prohibited from lawfully purchasing firearms after December 8, 2022. (*Id.* ¶ 11).

Plaintiff Sportsman's Warehouse is a firearms retailer with eight locations in Oregon. (Declaration of Matthew French ("French Decl.") ¶¶ 4-5). It serves hundreds of thousands of Oregon residents and helps them to protect themselves, participate in outdoor sporting activities, and subsist through hunting, as well as participating in many other lawful activities, by exercising their Second Amendment right to purchase and possess firearms. (*Id.* ¶¶ 4, 7). Last year, Sportsman's sold tens of thousands of firearms in Oregon, generating tens of millions of dollars in revenue. (*Id.* ¶ 15). If it were not for the de facto ban on purchasing that will go into effect on December 8, Sportsman's would continue to sell firearms to its customers after that date. (*Id.* ¶¶ 16-17). But because it fears prosecution by Defendants for violating the law, and because compliance with the law will be *impossible*, Sportsman's will be forced to cease selling firearms everywhere in Oregon on December 8. (*Id.* ¶ 16).

## ARGUMENT

"The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain a preliminary injunction, plaintiffs must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an

injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008).  When the government is a party to an action, these last two factors merge.

*Drakes Bay Oyster Co. v. Jewe4ll*, 747 F.3d 1073, 1092 (9th Cir. 2014).  The standard

governing the grant of a temporary restraining order is the same. *Brown v. United States*

*Forest Service*, 465 F. Supp.3d 1119, 1123 (D. Or. 2020).

## I      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE OREGON'S MAGAZINE BAN VIOLATES THE SECOND AMENDMENT.

This case presents a clear constitutional violation.  The Second Amendment

states: "A well regulated Militia, being necessary to the security of a free State, the right

of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.

This right is personal and presumptively "belongs to all Americans."  *District of*

*Columbia v. Heller*, 554 U.S. 570, 581 (2008).  Under *Bruen*, this Court must begin by

reviewing the Second Amendment's text; and "when the Second Amendment's plain text

covers an individual's conduct, the Constitution presumptively protects that conduct.  To

justify its regulation, the government . . . must demonstrate that the regulation is

consistent with this Nation's historical tradition of firearm regulation."  142 S. Ct. at

2126.

Analyzing the text in this case is straightforward.  The Supreme Court has

explained that "the most natural reading of 'keep Arms' in the Second amendment is to

'have weapons.' "  *Heller*, 554 U.S. at 584.  And of course, to *have* a firearm, there must

be a way for a citizen to *buy* a firearm, because constitutional rights "implicitly protect

those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5,

26 (2016) (Thomas, J. concurring in the judgment).  As the Ninth Circuit has correctly

explained, "the right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms." *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (*en banc*) (quotations omitted); *see also Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022) (noting that "laws that burden the ability to purchase arms burden Second Amendment rights"), *vacated and remanded for proceedings consistent with Bruen*, 47 F.4th 1124 (Mem.); *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp.2d 928, 930 (N.D. Ill. 2014) ("This right must include the right to acquire firearms."); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them.").

Therefore, the *de facto* ban on purchases of firearms in Oregon is presumptively unconstitutional and the Court would ordinarily assess whether Defendants could point to a tradition of "distinctly similar historical regulation" that burdened the right in the same way and for the same reasons to justify the law. *Bruen*, 142 S. Ct. at 2131. However, in this case it is inappropriate to even consult history, because "to the extent later history contradicts what the text says, the text controls" and historical practice "cannot overcome or alter [the constitutional] text." *Id.* at 2137. There is simply no way to square the right to keep and bear arms with a statute that forbids individuals to acquire arms

In fact, the Supreme Court has already declared laws this restrictive outside the pale of our historical traditions of firearm regulation. In *Heller*, the Supreme Court invalidated a District of Columbia law that "totally bans handgun possession in the home" and "requires that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." 554 U.S. at 628. Finding that the law "amounts to a prohibition on an entire class of 'arms' that is overwhelmingly chosen by

American society for [the] lawful purpose" of self-defense, the Court declared it unconstitutional, noting "[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban. And some of those few have been struck down." *Id.* at 628–29. Measure 114, when it goes into effect, will join the small group of laws that are comparably strict to the law invalidated in *Heller*, since it bans the purchase of *all* firearms. Just as there could be no historical precedent for the law in *Heller*, there is plainly no historical tradition of laws that can justify a flat ban on the sale of *all firearms* in the State of Oregon. And just as in *Heller*, comparably restrictive laws have been struck down. In *Illinois Association of Firearms Retailers*, for example, the court held that the City of Chicago's "flat ban on legitimate sales and transfers [of firearms]" violated the Second Amendment. 961 F.Supp.2d at 947. And of course, a municipal ban on firearm sales, while unconstitutional, allows residents to freely acquire firearms in other municipalities in the state. Interstate firearm sales, by contrast, are sharply circumscribed by federal law. *See* 18 U.S.C. §§ 922(a)(3), (b)(3).

Unless and until Oregon puts into place a process for granting carry permits that will allow ordinary, law-abiding Oregonians to exercise their rights by purchasing firearms, Measure 114 will work an abridgement of the Second Amendment right to keep and bear arms and must be enjoined.

## II    THE REMAINING INJUNCTION FACTORS ALL FAVOR PLAINTIFFS.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 20-12). This is no less true in the context of a Second Amendment challenge. The Second Amendment "is not 'a second class right, subject to an entirely different body of rules

than other Bill of Rights guarantees.' " *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald*, 561 U.S. at 780 (plurality op.)). "The Second Amendment protects . . . intangible and unquantifiable interests," infringements of which "cannot be compensated by damages." *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). As such, for the same reasons that Plaintiffs have demonstrated the Oregon *de facto* ban on purchasing firearms infringes their Second Amendment rights, they have established irreparable harm.

The existence of an ongoing constitutional violation also disposes of the "balance of the equities" and "public interest" factors this Court considers in granting a preliminary injunction. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (quoting *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)). And Oregon will not be harmed in any way by an injunction that merely keeps in place the status quo which has *always* prevailed in Oregon until now. Supporters of Measure 114 have expressed their belief that "sales will not halt because permit rules cannot be required until (Oregon State Police) develops the rules and finalizes the standardized form to apply," Maxine Bernstein, *Oregon gun sales skyrocket after gun control Measure 114 passes*, THE OREGONIAN/OREGONLIVE (Nov. 16, 2022), *available at* https://bit.ly/3VJrNVS. Unfortunately, there is no provision in Measure 114 that delays its effectiveness until application is possible, but an injunction from this Court could supply that restriction, and the balance of harms cannot favor Defendants when the Court is merely implementing a common-sense stop-gap that even Measure 114's most ardent supporters believe should be in place.

**Conclusion**

For these reasons, the Court should enter a temporary restraining order and preliminary injunction in Plaintiffs' favor against enforcement of the unconstitutional Oregon purchase ban unless and until permits are being processed and issued under Measure 114.

Dated:  December 2, 2022.          Respectfully submitted,

_s/  James L. Buchal_
James L. Buchal, OSB No. 921618
E-mail:  jbuchal@mbllp.com
MURPHY & BUCHAL LLP
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011

Adam Kraut*
PA Bar No. 318482
E-mail:  akraut@saf.org
SECOND AMENDMENT FOUNDATION
12500 N.E. Tenth Place
Bellevue, Washington 98005
Tel:  (800) 426-4302

William Sack*
PA Bar No. 325863
E-mail:  Wsack@FPClaw.org
FIREARMS POLICY COALITION
5550 Painted Mirage Road STE 320
Las Vegas, NV 89149
Tel:  (916) 596-3492

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs*