Shawn M. Lindsay
shawn@jurislawyer.com
Daniel J. Nichols
dan@jurislawyer.com
JurisLaw LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
Telephone: (503) 968-1475

*Attorneys for Eyre Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>TINA KOTEK, et al.,<br>　　　　　　　　　Defendants. | Case No. 2:22-cv-01815-IM *(Lead Case)*<br>Case No. 3:22-cv-01859-IM *(Trailing Case)*<br>Case No. 3:22-cv-01862-IM *(Trailing Case)*<br>Case No. 3:22-cv-01869-IM *(Trailing Case)*<br><br>CONSOLIDATED CASES<br><br>**PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE**<br><br>**ORAL ARGUMENT REQUESTED** |
| MARK FITZ, et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　　　　　Defendants. | |
| KATERINA B. EYRE, et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　　　　　Defendants. | |
| DANIEL AZZOPARDI, et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　　　　　Defendants. | |

PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE

## LR 7-1 CERTIFICATE

The parties made a good faith effort through telephone conference to resolve the dispute and have been unable to do so.

## MOTIONS IN LIMINE

Plaintiffs respectfully submit these consolidated Motions in Limine pursuant to Federal Rules of Evidence 401, 402, and 403, and this Court's Order of April 24, 2023 (Dkt. 132). Plaintiffs move in limine to prohibit Defendants from introducing irrelevant and prejudicial evidence on the following topics:

(1) Medical testimony about treating gunshot victims;

(2) Number of rounds actually fired in self-defense situations;

(3) Public carry laws;

(4) Public safety considerations; and

(5) Mass shootings.

These motions are supported by the accompanying Memorandum, the record in this matter, and all other matters properly before this Court.

**MEMORANDUM**

**INTRODUCTION**

Plaintiffs move in limine to prohibit Defendants from introducing irrelevant and prejudicial evidence on the following topics: (1) medical testimony about treating gunshot victims; (2) number of rounds actually fired in self-defense situations; (3) public carry laws; (4) public safety considerations; and (5) mass shootings.

The purpose of this trial is not to explore the benefits or disadvantages of specific firearm regulations, but to determine the legal scope Oregon's Measure 114 under the Second Amendment.[1] That determination must be made in accordance with the controlling substantive law provided by the Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). *Bruen* was emphatic that it was reshaping the legal test applied in this area. As that decision explained—at least *nine* different times—a government regulation that impinges on conduct covered by "the Second Amendment's plain text" may be "justif[ied]" only if the state can "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126; see also *id.* at 2127, 2130, 2133, 2135, 2138, 2149 n.25, 2150, 2156. Simply put, the evidence challenged in these motions in limine contributes nothing to either of those questions. At best, this evidence will waste precious time in an already short trial on extraneous matters; at worst, the evidence is wildly prejudicial, as Defendants seek to focus on the non-relevant but horrific actions of a small minority of criminals as a way of justifying curtailing the rights of the law-abiding "people."

---

[1] And other areas of law—e.g., the Takings Clause, for the purposes of Plaintiffs' Takings Clause challenge to Measure 114's magazine ban. The primary focus of these motions in limine, however, is the Second Amendment challenges.

Most of the evidence described above is irrelevant to *Bruen*'s historical-tradition inquiry. When it comes to a flat ban on arms, the relevant question is whether those arms are "typically possessed by law-abiding citizens for lawful purposes." *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008). The focus on typicality means that evidence of outlier uses—such as for mass shootings, an *extreme* outlier use—is irrelevant to the inquiry. Similarly, the inquiry focuses on the purpose for which the arms are *possessed*, not on incidents in which they are actually used. Indeed, were the latter the test, there would be *no* right to "keep and bear" arms, as most gun owners never have to fire their weapon in a self-defense situation. And while *Bruen* allows for modern-day regulations to be justified through historical analogs, this is only if the analog is actually analogous—that is, that if it is "at least" similar in terms of "how and why." 142 S.Ct. at 2133. Defendants' proffered evidence regarding public-carry permits—i.e., requiring a permit to carry one's already lawfully possessed firearm in public—flunks this test.

Not only does *Bruen* require that firearm regulation be consistent with historical tradition, it also expressly rejected the till-then-prevalent practice of "federal courts … making … empirical judgments regarding firearm regulations under the banner of 'intermediate scrutiny.'" *Id.* at 2131. Thus, while before *Bruen*, evidence that went to balancing a regulation's restrictions on the right to bear arms against its supposedly beneficial effect on public safety may have been relevant evidence at trial, after *Bruen* it is not. The only purpose for introducing such evidence now is to create prejudice, confuse the relevant issues, or waste valuable trial time—all of which is prohibited by the Rules of Evidence.

## LEGAL STANDARDS

A motion in limine serves as "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial,"

including concerns such as relevancy. *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, 2023 WL 371649, at *1 (D. Or. Jan. 24, 2023). Although the Ninth Circuit has suggested that motions in limine may be less necessary in bench trials, it has noted that "[f]or logistical and other reasons, pretrial evidentiary motions may be appropriate." *Heller*, 551 F.3d at 1112; *see also Johnson v. Guardian Mgmt.*, 2022 WL 19235450 (D. Or. Jan. 31, 2022) (granting motion in limine in anticipation of bench trial); *Conlan v. Costco Wholesale Corp.*, 2022 WL 3700108 (9th Cir. Aug. 26, 2022) (reviewing a district court's motion in limine prior to a bench trial without issue). There is, in short, no bar on bringing motions in limine in a bench-trial setting, and every reason to do so when the schedule is as compressed and the docket as full as it will be in this trial.

Only evidence that is relevant is admissible at trial. Fed. R. Evid. 402. To be considered relevant, "the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Click*, 807 F.2d 847, 850 (9th Cir. 1987) (quoting *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)); *see* Fed. R. Evid. 401. The Ninth Circuit has explained that "whether a fact is 'of consequence in determining the action' generally requires considering the substantive issues the case presents." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019); *see also Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *10 (N.D. Cal. June 30, 2012) (finding testimony that "is not relevant to any legal issues" to be inadmissible under Rule 401). In addition, Rule 403 allows a judge to "exclude relevant evidence because of prejudicial dangers or considerations" and "provid[es] the means of keeping distracting evidence out of the trial." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).[2]

---

[2] While there is some question over how the "unfair prejudice" element of Rule 403 applies to bench trials, it has been suggested that at the very least, the other efficiency considerations of Rule 403 "should be available to the judge trying a case without a jury." 22A Wright & Miller, *Fed. Prac. & Proc. Evid.* §5213 (2d ed. 2023).

Page 4     PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE

## ARGUMENT

In order for evidence to pass Rule 401's relevancy test, it must be related to "the substantive issues the case presents." *Crawford*, 944 F.3d at 1077. Here, the underlying substantive law is set by *Bruen*, along with *Heller*, *McDonald*, and *Caetano,* and any evidence that is not "of consequence" to that substantive law is not relevant to this case. Fed. R. Evid. 401. *Bruen* prescribes two inquiries: [1] whether "the Second Amendment's plain text covers an individual's conduct"; and [2] whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S.Ct. at 2126. In assessing these questions, courts also ask whether the firearms and magazines banned by Measure 114 are within the Second Amendment's definition of "arms," which includes all "modern instruments that facilitate armed self-defense," *id.* at 2132; whether they are "in common use today" for lawful purposes or are instead "dangerous *and* unusual," *i.e.*, "'highly unusual in society at large,'" *id.* at 2143 (emphasis added) (quoting *Heller*, 554 U.S. at 627); whether the regulation "addresses a general societal problem that has persisted since the 18th century," and if so, whether there is a "distinctly similar historical regulation addressing that problem," *id*. at 2131; or whether the regulation is justified by "unprecedented societal concerns or dramatic technological changes," and if so, whether the regulation is "relevantly similar" to historical regulations, including consideration of "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense," *id*. at 2132-33.

But *Bruen* explicitly *forbids* conducting interest balancing or generalized policy inquiries. 142 S.Ct. at 2129 (citing *Heller*, 554 at U.S. at 334; *McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010)); *id.*at 2131, 2133 n.7; *see id.* at 2127 n.4 (overturning prior circuit-level precedent incorporating an interest-balancing element). To be relevant therefore, proposed evidence must relate to one of these legal issues as recognized by *Bruen* and may not relate to the interest balancing that *Bruen* expressly forecloses.

**I.      Motion In Limine 1: Medical Testimony About Treating Gunshot Victims Should Be Excluded As Irrelevant And Prejudicial.**

Any evidence relating to the challenges of treating gunshot victims with multiple wounds or about how the number and severity of gunshot wounds has increased in recent years is irrelevant under Rule 401 to the substantive issues of this case. Such evidence clearly bears no relationship to the relevant *Bruen* inquiries of whether "the Second Amendment's plain text covers an individual's conduct" and whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S.Ct. at 2126. Nor does this evidence relate to whether a given weapon is "dangerous *and* unusual": "[T]his is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual," because of course *all* firearms are deadly. *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring in the judgment). Rather, this evidence is plainly being offered for the same reason that similar testimony was offered in pre-*Bruen* cases—to argue that the state has a particularly strong justification for banning these particular sorts of weapons. *See, e.g.*, *Worman v. Healey*, 922 F.3d 26, 39 (1st Cir. 2019) (testimony of trauma surgeon weighed in intermediate-scrutiny analysis), *abrogated by Bruen*, 142 S.Ct. 2111. This kind of showing has been categorically ruled out by *Bruen*, which made clear that the state may no longer "simply posit that the regulation promotes an important interest." 142 S.Ct. at 2126. Because testimony regarding the treatment of gunshot wounds has no bearing on whether there is a "historical tradition" justifying Oregon's new firearm regime, this evidence should be excluded.

Evidence about the treatment of gunshot victims should also be excluded as both "unfair prejudice" and "wasting time." Fed. R. Evid. 403. Detailed evidence about the severity of gunshot wounds is precisely the kind of prejudicial evidence that "arouses [a] sense of horror." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990). Moreover, introducing such evidence serves no purpose and would be a waste of time. Plaintiffs do not dispute that firearms are lethal,

nor do they take issue with the general proposition that, all else equal (caliber, location, etc.), multiple gunshot wounds can be more damaging than fewer gunshot wounds. Yet while gunshot trauma evidence is both prejudicial and redundant, it serves no probative value, *see* above. Because the unfair prejudice and wasting of time that would result from this evidence substantially outweighs its nonexistent probative value, this evidence should be excluded.

II. **Motion In Limine 2: Evidence Regarding The Number Of Rounds Actually Fired In Self-Defense Situations Should Be Excluded As Irrelevant.**

Any evidence relating to how many rounds are actually fired in self-defense situations is irrelevant because the only relevant question under Rule 401 is whether the magazines at issue are in "common use" or "commonly owned" for lawful purposes. Introducing evidence of rounds actually used would only be relevant if there was no right to own a magazine over the certain number of rounds typically expended in self-defense situations. But if that was the law, the state could ban magazines entirely; after all, most people fortunately never have to fire their firearms for self-defense at all. Moreover, the theory that the scope of the right to keep and bear arms depends on a person's need to exercise it is inconsistent with the very notion that the Second Amendment protects a fundamental right. The argument that free speech rights are reserved for only those with an unusually compelling need to criticize the government would be laughed out of court. That is no less true when it comes to the Second Amendment.

Moreover, the how-many-do-you-really-need view of the fundamental right the Second Amendment protects is incompatible with *Bruen*, which explicitly "confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry … for the purpose … *of being armed and ready* for offensive or defensive action in a case of conflict with another person.'" 142 S.Ct. at 2134 (ellipses in original; emphasis added) (quoting *Heller*, 554 U.S. at 584). That fundamental right does not turn on how frequently people actually confront such situations or how many rounds

Page 7    PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE

they typically fire when they do. Instead, "the pertinent Second Amendment inquiry is whether" the arms in question—here, magazines that can hold more than ten rounds—"are commonly *possessed* by law-abiding citizens for lawful purposes." *Caetano*, 577 U.S. at 420 (Alito, J., concurring in the judgment) (emphasis added); *see also Heller*, 554 U.S. at 720 (Breyer, J., dissenting) (begrudgingly admitting that, under "[t]he majority" opinion in *Heller*, the "[Second] Amendment protects those weapons 'typically possessed by law-abiding citizens for lawful purposes'"); *Bruen*, 142 S.Ct. at 2143 (reiterating that "Arms" fall outside the Second Amendment's protection only if they are "highly unusual in society at large" (quoting *Heller*, 554 U.S. at 627)). Because this right does not turn on how frequently people actually confront self-defense situations or how many rounds they typically fire when they do, any evidence bearing on that question is irrelevant to the underlying substantive law and should be excluded.

### III. Motion In Limine 3: Evidence Regarding Public Carry Laws Should Be Excluded As Irrelevant.

Evidence relating to the existence or scope of public carry laws cannot serve as analogs for Oregon's "permit-to-purchase" regime and is therefore irrelevant to the substantive law of this case. As an initial matter, neither *Heller* nor *Bruen* actually upheld the constitutionality of permit requirements.[3] Nonetheless, Defendants claim that the public carry permits discussed as dicta in those cases are relevant for establishing the constitutionality of the permits at issue here. But unlike Oregon's novel "permit-to-purchase" regime, the licensing regime in *Bruen* imposed no burdens on individuals' ability to acquire firearms; it imposed burdens only on one's ability "to carry a firearm outside [one's] home or place of business." *Bruen*, 142 S.Ct. at 2123. The same

---

[3] *Bruen* struck down the only permit requirement that was before it, *see Bruen*, 142 S.Ct. 2111, and *Heller* explicitly declined to address the District of Columbia's permitting regime given the Court's holding that the government cannot ban arms typically possessed by law-abiding citizens for lawful purposes, *see Heller*, 554 U.S. at 631.

is true of the other 43 States' "shall-issue" licensing regimes to which the Court referred in a footnote. *Id*. at 2138 n.9. All of those regimes govern public carry; not a single one of them requires a permit just to purchase or acquire firearms.

This distinction matters because the test *Bruen* established requires the government to come forward with historical regulations that are actually analogous to the challenged regulation in terms of "two metrics": "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133. The nature of the burden is thus part of the test. *See id*. (reiterating that "whether modern and historical regulations impose a comparable burden on the right of armed self-defense" is a "'central' consideration[]" (emphasis omitted)). And it does not take a doctorate to understand that laws that restrict individuals' right to carry do not impose the same burden on the right of armed self-defense as laws, like Measure 114, that restrict individuals' ability to have a firearm at all. After all, one who is denied a carry permit can at least still exercise the right of armed self-defense in his home. One who is denied a permit to purchase under Measure 114 cannot do even that much. Since public carry laws cannot serve as legally relevant analogs for Oregon's permit-to-purchase regime, they serve no purpose at trial and should be excluded under Rule 401 as irrelevant.

**IV.    Motion in Limine 4: Evidence Regarding Public Safety Interest Should Be Excluded As Irrelevant.**

Evidence about the relationship between Measure 114 and general public safety is "of no consequence" to any relevant inquiry at this stage of the litigation. To justify introducing evidence linking magazines that can hold over ten rounds of ammunition to mass shootings or fatalities, linking permitting laws to homicide rates, or creating any other link between Measure 114's restrictions and public safety, Defendants must successfully demonstrate that such evidence has a bearing on the substantive inquiries of *Bruen*. Defendants cannot make that showing because these

public safety arguments solely support the kind of pre-*Bruen* interest balancing that is no longer permissible in a Second Amendment analysis.

In other contexts, a state's asserted interest in public safety is often considered compelling, but the Supreme Court could not have been clearer that "[t]he Second Amendment … 'surely elevates above all other interests the right of *law-abiding, responsible citizens* to use arms' for self-defense." *Bruen*, 142 S.Ct. at 2131 (emphasis added) (quoting *Heller*, 554 U.S. at 635). In other words, just as the First Amendment rights of the ordinary citizen cannot be circumscribed based on the (comparatively rare) non-protected speech of the slanderer or spy, nor her Sixth Amendment rights curtailed due to the rare involvement of attorneys in criminal activity, so too the state cannot point to rare criminal activity to cut short Second Amendment rights. (Indeed, what the state points to most—mass shootings by a lone gunman—is rare *even* by comparison to other criminal gun use.) The inquiries that *Bruen* does authorize involve something more than simply asking policy questions about public safety—such as asking whether a given weapon is "highly unusual in society at large" as well as just dangerous. 142 S.Ct at 2143; (quoting *Heller*, 554 U.S. at 627); *see Caetano*, 577 U.S. at 417 (Alito, J., concurring in the judgment) ("[T]his is a conjunctive test."). Accordingly, evidence about the links between Measure 114's restrictions and public safety is strictly foreclosed by *Bruen*. This evidence does nothing to show that the regulations at issue are "consistent with this Nation's historical tradition," which is the only way to demonstrate "that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126.

At a minimum, this Court should obligate Defendants to bring in evidence in the first instance showing that any public-safety evidence fits under a *Bruen* inquiry. Thus, for instance, Defendants should have to show that a given weapon is "unusual" before it can also discuss

whether it is "dangerous." It should have to show that a given societal problem is not "a general societal problem that has persisted since the 18th century," but rather is "unprecedented," or that there have been "dramatic technological changes" in the relevant arms (*recently*, not as compared to 1789) before discussing public-safety concerns more generally. *Id.* at 2131-33. Only in this way can Defendants be prevented from inducing legal error by running this trial as though it were occurring before June 2022, i.e., before *Bruen*.

Nor should plaintiffs be allowed to use the public-interest language of the injunction test to sneak considerations of public safety, barred at the front door by *Bruen*, in around the back. To be sure, at an earlier stage of this litigation, considerations of public safety may have been appropriate when this Court was considering granting a preliminary injunction. *See Dahl v. HEM Pharms. Corp.,* 7 F.3d 1399, 1404 (9th Cir. 1993*)* (In a preliminary-injunction posture, "[p]ublic safety should be considered by a court when granting equitable relief." (citing *Chalk v. United States Dist. Court for the Cent. Dist. of Cal.,* 840 F.2d 701, 711 (9th Cir. 1988)). But now that this litigation has proceeded to trial, should this Court find the Plaintiffs prevail on the merits, it will follow that "'[i]t is always in the public interest to prevent the violation of a party's constitutional rights.'" *Bowman v. Matteucci*, 2021 WL 5316440, at *3 (D. Or. Nov. 15, 2021) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).[4]

Because the evidence of public safety considerations adds nothing to the relevant substantive law under *Bruen*, it should be excluded under Rule 401.

---

[4] Plaintiffs contend that this Court should defer consideration of the appropriate remedy until after the trial on the merits. Dkt. 161 at 26. This will allow the parties to address such considerations as severability and the correct scope of any injunction, as well as preventing confusion between the discussions of the remedy and of the merits.

Page 11    PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE

**V.     Motion In Limine 5: Evidence Regarding Mass Shootings Should Be Excluded As Irrelevant And Prejudicial.**

As a specific instance of the foregoing, this Court should exclude any evidence relating to the prevalence or nature of mass shootings, as well as evidence linking magazines capable of holding more than ten rounds to mass shootings, as irrelevant under Rule 401. Suggesting that restrictions on magazines capable of holding more than ten rounds impact mass shooting violence is almost an exact recitation of what courts used to consider as part of the pre-*Bruen* balancing inquiry. *See e.g.*, *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) (describing how Sunnyvale "presented evidence that large-capacity magazines are disproportionately used in mass shootings as well as crimes against law enforcement," which "substantiate[d] its important interests"). Regardless of what Defendants might think about *Bruen*, they cannot use evidence in this court to try to circumvent its holding. Because interest-balancing is foreclosed by *Bruen*, evidence addressing it should be excluded as irrelevant.

In the context of a flat ban on arms, the only question after *Bruen* is whether the arms that have been banned are "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. Evidence about the tiny minority of Americans who commit heinous acts with magazines containing more than ten rounds has nothing to do with the only relevant legal questions—i.e., who the *typical* owners of magazines containing more than ten rounds are and how they *typically* use them. Indeed, the Supreme Court has already foreclosed the possibility that the link between magazines containing more than ten rounds and mass shootings is relevant. In *Heller*, the dissenters protested that handguns "are specially linked to urban gun deaths and injuries" and "are the overwhelmingly favorite weapon of armed criminals," *Id.* at 682 (Breyer, J., dissenting), but the majority found this irrelevant to whether handguns are constitutionally protected. It was enough for the majority that handguns are *typically* possessed for lawful purposes. *See id.* at 624-

25, 628. What was true in *Heller* is no less true here, given the millions of law-abiding Americans who lawfully own the arms that Oregon has banned. There is accordingly no legally relevant purpose to introduce evidence about the small minority of individuals who use their arms for the unlawful purpose of carrying out mass shootings.

Evidence relating to mass shootings should also be excluded pursuant to Rule 403. For obvious reasons, evidence that focuses on the unquestionably horrific details of mass shootings will necessarily result in substantial prejudice. But the evidence is also likely to lead to "confusing the issues" and "wasting time." Fed. R. Evid. 403. The question of what causes mass shootings is entirely distinct from the question of are magazines capable of holding more than ten rounds in common use for lawful purposes—and only one of those questions is relevant to the instant case. By introducing evidence on mass shootings during the trial, Defendants are substantially likely to confuse these distinct questions and waste time on an irrelevant inquiry.

## CONCLUSION

For the reasons set forth above, this Court should grant Plaintiffs' consolidated motions in limine.

Respectfully submitted,

DATED: May 15, 2023

Paul D. Clement*
Erin E. Murphy*
Matthew D. Rowen*
Nicholas M. Gallagher*
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

* admitted *pro hac vice*

s/ Stephen Joncus

JURISLAW LLP

s/ Shawn M. Lindsay
Shawn M. Lindsay (OSB No.: 020695)
Daniel J. Nichols (OSB No.: 101304)
Three Centerpointe Drive
Suite 160
Lake Oswego, OR 97035
(503) 968-1475
shawn@jurislawyer.com

*Counsel for Eyre Plaintiffs*

s/ Leonard W. Williamson

| | |
|---|---|
| Stephen J. Joncus, OSB #013072<br>JONCUS LAW PC<br>13203 SE 172nd Ave Ste 166 #344<br>Happy Valley, OR  97086<br>(971) 236-1200<br>steve@joncus.net | Leonard W. Williamson, OSB #910020<br>VAN NESS WILLIAMSON LLP<br>960 Liberty St. SE, Ste 100<br>Salem, OR 97302<br>(503) 365-8800<br>l.williamson@vwllp.com<br><br>*Counsel for OFF Plaintiffs*<br><br>s/ James L. Buchal<br>James L. Buchal, OSB #910020<br>MURPHY & BUCHAL LLP<br>PO Box 86620<br>Portland, OR 97286<br>(503) 227-1011<br>jbuchal@mbllp.com<br><br>*Counsel for Fitz and Azzopardi Plaintiffs* |

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(B)(2)

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 3,995 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 15th day of May, 2023.

s/ Shawn M. Lindsay
Shawn M. Lindsay (OSB No.: 020695)

Counsel for Eyre Plaintiffs
