Michael R. McLane
mmclane@lynchmurphy.com
Lynch Murphy McLane LLP
Telephone:  (541) 383-5857

Matthew A. Wand
matt@wandlegal.com
Wand Legal LLC
Telephone:  (503) 680-8180
1000 SW Disk Dr
Bend, OR 97702

*Attorneys for Amici Curiae*

Regina Lennox
rlennox@safariclub.org
Safari Club International
Telephone: (202) 543-8733
501 2nd Street NE
Washington, DC 20002

*Pro Hac Vice Attorney for Amicus Curiae Safari Club International*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>                  Plaintiffs,<br><br>  v.<br><br>KATE BROWN, et al.,<br><br>                  Defendants. | Case No. 2:22-cv-01815-IM *(Lead Case)*<br>Case No. 3:22-cv-01859-IM *(Trailing Case)*<br>Case No. 3:22-cv-01862-IM *(Trailing Case)*<br>Case No. 3:22-cv-01869-IM *(Trailing Case)*<br><br>CONSOLIDATED CASES<br><br>**AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION**<br><br>*(caption continued on next page)* |

Page 1 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

MARK FITZ, et al.,

                Plaintiffs,

    v.

ELLEN F. ROSENBLUM, et al.,

                Defendants.

KATERINA B. EYRE, TIM FREEMAN, MAZAMA SPORTING GOODS, NATIONAL SHOOTING SPORTS FOUNDATION, and OREGON STATE SHOOTING ASSOCIATION,

                Plaintiffs,

    v.

ELLEN F. ROSENBLUM, Attorney General of Oregon, and TERRI DAVIE, Superintendent of the Oregon State Police,

                Defendants.

DANIEL AZZOPARDI, et al.,

                Plaintiffs,

    v.

ELLEN F. ROSENBLUM, et al.,

                Defendants.

## **TABLE OF CONTENTS**

INTEREST OF THE AMICI ............................................................................................. 4

ARGUMENT ..................................................................................................................... 5

    A. Measure 114 Unconstitutionally Restricts the Exercise of Second Amendment Rights for Lawful Hunting. ........................................................... 6

    B. Measure 114 Harms the Coalition's Conservation Activities. ........................ 9

    C. Measure 114 Increases the Already High Burden on County Sheriffs. ........ 10

    D. Implementation of Measure 114 Injures State Conservation Programs. ...... 10

Page 2 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

CONCLUSION ..........................................................................................................................1
2

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller*, 554 U.S. 570 (2008).......................................................3

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)....................................3

*Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007) ......................................3

*Sierra Club v. U.S. Fish & Wildlife Serv.*, 189 F. Supp. 2d 684 (W.D. Mich. 2002).....................8

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) .................................................3

**Statutes**

16 U.S.C. § 669 *et seq.*......................................................................................................8

26 U.S.C. §§ 4161(b) & 4181 ............................................................................................8

U.S. Const. amend. II.........................................................................................................3

**Other Authorities**

D. Speak, *Oregon's LGBTQ Community Worries that a New Law Will Keep Them from Obtaining Guns*, NPR (Dec. 16, 2022).................................................................5

M. Frassetto, *Firearms & Weapons Legislation up to the Early Twentieth Century* (Jan. 15, 2013).................................................................................................................3

N. Gallo, *Misfire: How the North Carolina Pistol Purchase Permit System Misses the Mark of Constitutional Muster and Effectiveness*, 99 N.C. L. Rev. 529 (Jan. 1, 2021)..............5

R. Nothstine, *Jim Crow Pistol Permit Remains a Shameful Blot on Our State*, The Carolina Journal (Sept. 29, 2022) ...............................................................................5

R.J. Spitzer, *Gun Law History in the U.S. & Second Amend. Rights*, 80 L. & Contemp. Probs. 55 (2017) ...........................................................................................................3

U.S. Dep't of the Interior, Press Release, *Over $1.6 Billion Will Support State Fish and Wildlife Conservation and Outdoor Access* (Mar. 3, 2023) ......................................8

Page 3 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON 97702

**AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION**

Oregon Hunters Association, Congressional Sportsmen's Foundation, the Rocky Mountain Elk Foundation, Sportsmen's Alliance Foundation, Oregon Wild Sheep Foundation, Safari Club International, National Deer Association, Delta Waterfowl, and Ducks Unlimited submit this amicus brief in support of Plaintiffs' challenge to Oregon Ballot Measure 114, the "Changes to Firearm Ownership and Purchase Requirements Initiative" ("Measure 114").

The above-named organizations comprise the Sportsmen's and Sportswomen's Coalition (the "Coalition"), with members who represent all genders, ages, orientations, economic statuses, and religions, who share a common interest in hunting, fishing, outdoor recreation, and shooting sports. These organizations have demonstrated success in wildlife and habitat conservation and management of natural resources for current and future generations.

Measure 114 contains two new restrictions on firearms and firearms accessories. The first requires a state permit to purchase any firearm and establishes an arduous permitting process that imposes an unconstitutional burden on Second Amendment rights. The second prohibits the purchase, sale, and further ownership of magazines capable of holding over ten rounds of ammunition, even though these magazines are used in lawful hunting and sport shooting. While both provisions severely constrain the ability of Oregon citizens and others to exercise their constitutional rights, the Coalition focuses on the permit-to-purchase requirement, as it not only

Page 4 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON 97702

infringes on Second Amendment rights, but threatens successful wildlife conservation within the State.

## INTEREST OF THE AMICI

The Coalition organizations represent hundreds of thousands of sportsmen and women, recreational shooters, and conservationists. These organizations and their members support hunting as a wildlife conservation and management tool. They fund and participate in conservation projects including habitat improvement, wildlife restoration, and similar efforts in Oregon. Although each organization has its distinct mission, these missions share specific characteristics: conservation of wildlife, protection of hunting and sporting activities, and public education regarding hunting and its role as a traditional activity and conservation tool. The Coalition contains an Oregon-based organization and national organizations with local members or chapters in Oregon.[1]

These pro-hunting and conservation organizations have engaged in litigation and advocacy efforts in Oregon to promote hunting and sustainable-use conservation. Specific to Measure 114, the Coalition organizations were (and continue to be) members of a coalition which opposed passage of Measure 114, for the reasons below (among others). Each of these organizations has members and supporters whose interests will be harmed by implementation of Measure 114. As hunters and recreational shooters, these individuals purchase, own, and use firearms as a necessary element of their activities. Measure 114's onerous new permit requirement will significantly damage their interests because they will no longer be able to obtain firearms for use in lawful,

---

[1] For example, the Rocky Mountain Elk Foundation has 24 chapters and more than 14,000 members in Oregon. Safari Club International has two chapters in Oregon. Other organizations have thousands of members who are Oregon citizens. And the Congressional Sportsmen's Foundation supports a national caucus of state legislators, which includes representatives from Oregon.

Page 5 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

regulated hunting. Their hunting tradition and ability to introduce youth and new hunters to this tradition will also suffer.

## ARGUMENT

Measure 114's provisions unconstitutionally burden protected Second Amendment rights. As the Supreme Court recently explained, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022).

The Second Amendment's plain text covers the right to keep and bear arms, which encompasses the right to own them. *E.g.*, U.S. Const. amend. II; *Parker v. District of Columbia*, 478 F.3d 370, 386 (D.C. Cir. 2007) (citing *United States v. Emerson*, 270 F.3d 203, 231 n.31 (5th Cir. 2001)). The State therefore must justify the restrictions as being consistent with historical tradition. As Plaintiffs explain, the State has not and cannot justify the measure. *E.g.*, Dkt. 165 at 13-16 (Pls. Mot. for Summ. Judt.), Dkt. 211 at 3-7 (Pls. Rep. in Supp. of Mot. for Summ. Judt.). And as explained below, the lack of any justification, historical or practical, becomes even more clear in the context of use of firearms for hunting.

**A. Measure 114 Unconstitutionally Restricts the Exercise of Second Amendment Rights for Lawful Hunting.**

The Second Amendment includes the right to bear firearms for purposes including "self-defense and hunting." *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008). States historically authorized and continue to authorize the hunting of wildlife using firearms. *E.g.*, R.J. Spitzer, *Gun Law History in the U.S. & Second Amend. Rights*, 80 L. & Contemp. Probs. 55, 60 (2017) (citing M. Frassetto, *Firearms & Weapons Legislation up to the Early Twentieth Century* (Jan. 15, 2013)).

When the Second Amendment was adopted, firearms were commonly used for hunting. *See, e.g.*,

Page 6 -   AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

*Emerson*, 270 F.3d at 251–55. Despite this obvious historical and traditional use, Measure 114 infringes on the ability of Oregon's hunters to use their firearms to hunt.

Measure 114 restricts the right to own firearms—every single type and caliber, for all uses. And the restriction is an effective ban because, as explained by Plaintiffs, the designated safety courses are not available, there is no expectation that they will become available any time soon,[2] and sheriffs and police officers are already over-burdened with existing responsibilities and background checks for firearms purchases. *E.g.*, Dkt. 165 at 6, Dkt. 187 at 20-21 (Pls. Opp. to Defs. Mot. for Summ. Judt.). Measure 114's added requirements will make legally obtaining firearms nearly impossible. The State cannot justify an effective ban on firearms used for historically authorized purposes, like hunting.

Practically speaking, the permit restriction on firearm purchases is even more problematic because it diminishes the future of lawful hunting. Creating an onerous-for-the-sake-of-onerous process for firearm purchases will drive away new hunters and sport shooters. It will also prevent young people from engaging in these activities because they cannot obtain the proper tools. Not only does Measure 114 bar a historically recognized firearms use, but it also obstructs the ability of the next generation to lawfully engage in this use.

Finally, Measure 114 infringes upon the Second Amendment right to bear arms for those who are not deemed fit to do so at the discretion of the permit agent. Measure 114 allows a permit agent to deny an application if he or she "conclude[s] that [the applicant] has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's

---

[2] These so-called "firearms safety" courses are required for expert shooters and hunters who have years of firearms experience and years of firearms safety and hunter education experience. Such an onerous new requirement makes zero sense for reducing gun violence.

Page 7 -   AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON 97702

mental or psychological state." Measure 114, § 4(1)(b)(C), (1)(c). This standard does not provide clear criteria and gives too much discretion to local sheriffs and other permit agents. Precedent exists for concern about the possibility of discrimination against hunters—and many other lawful users.

Laws similar to Measure 114 have been discriminatorily applied in other states. In North Carolina, for example, a permit requirement which restricts handgun ownership to those who can demonstrate "good cause," has been applied to prevent Black residents of the state from owning firearms. Black North Carolinians to this day are denied access to pistols almost three times more frequently than White residents.[3]

In Oregon, there has been vocal concern that Measure 114 will be applied to prevent certain groups or individuals from owning firearms.[4] Measure 114 contains no provision to compel the local sheriff or police chief to actually develop a permit system. It is possible that some county or city councils will prohibit the issuance of permits or impose other roadblocks, effectively denying the issuance of permits within that jurisdiction. While the Coalition's members engage in a traditional activity that provides food for their families (among other benefits), some groups oppose lawful hunting on moral grounds because it involves the killing of animals. *See*, *e.g.*, the

---

[3] *E.g.*, R. Nothstine, *Jim Crow Pistol Permit Remains a Shameful Blot on Our State*, The Carolina Journal (Sept. 29, 2022), available at https://www.carolinajournal.com/opinion/jim-crow-pistol-permit-remains-a-shameful-blot-on-our-state/; N. Gallo, *Misfire: How the North Carolina Pistol Purchase Permit System Misses the Mark of Constitutional Muster and Effectiveness*, 99 N.C. L. Rev. 529 (Jan. 1, 2021), available at https://scholarship.law.unc.edu/cgi/viewcontent.cgi?article=6824&context=nclr.

[4] *E.g.*, D. Speak, *Oregon's LGBTQ Community Worries that a New Law Will Keep Them from Obtaining Guns*, NPR (Dec. 16, 2022), available at https://www.npr.org/2022/12/15/1140713659/oregons-lgbtq-community-worries-that-a-new-law-will-keep-them-from-obtaining-gun.

Page 8 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON 97702

websites of animal rights groups Friends of Animals[5] and the Humane Society of the United States[6] (not to be confused with local humane societies). What if the local government or permit agent are morally opposed to lawful hunting, and determine that hunters pose a danger to self or others because they are able to take an animal's life? There is a real risk that Measure 114 will be applied against hunters to limit their abilities to obtain firearms, simply because they are hunters.

For these reasons and the reasons set forth by Plaintiffs, the Coalition requests that the Court enjoin and invalidate implementation of Measure 114 under the Second Amendment.

### B. Measure 114 Harms the Coalition's Conservation Activities.

The Coalition includes both Oregon organizations and national organizations with Oregon chapters and members. These organizations routinely raise funds to invest in conservation programs that benefit residents of the state. For example, one of Safari Club International's Oregon chapters has collaborated with the Cowlitz Tribe to relocate endangered Columbia white-tailed deer to more secure habitat. The Chapter is now funding a wildlife detour under a freeway in Eastern Oregon, to improve crossings for deer and other animals. The Rocky Mountain Elk Foundation along with Oregon Hunters Association provided funding to help purchase over 4,600 acres for Phase 1 of the Minam River Wildlife Area expansion. The expansion will permanently protect habitat along a migration corridor for elk, mule deer, and other wildlife. It will also link other protected areas, to expand both wildlife habitat and land for hunting, fishing, hiking, and other uses.

Non-profit organizations like those that comprise the Coalition and their local affiliates often obtain donated firearms and auction or raffle these, with the proceeds going to local

---

[5] https://friendsofanimals.org/what-we-believe/.

[6] https://www.humanesociety.org/all-our-fights/banning-trophy-hunting.

Page 9 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON 97702

conservation programs. Measure 114 makes firearms transfers prohibitively difficult if not impossible. Without the ability to sell firearms at their fundraisers, these organizations will simply not raise as much funding for conservation programs. For example, the Oregon Hunters Association estimates that implementation of Measure 114 will cut their fundraising efforts by ~50% if firearms effectively cannot be raffled or auctioned at events. Measure 114 thus will reduce local conservation funding and harm effective and proven wildlife and habitat programs.

    C. **Measure 114 Increases the Already High Burden on County Sheriffs.**

In Oregon, county sheriffs already bear a heavy law enforcement, civil, and administrative burden. They already handle a number of duties related to firearms, including but not limited to, conducting background checks, administering concealed carry licensing, and providing letters acknowledging firearm suppressor purchases. The onerous and duplicative background checks required by Measure 114, as well as the local permit criteria contemplated by the measure, will weigh down local sheriffs' departments even more. As explained by the Oregon State Sheriffs Association ("OSSA") in opposition to the measure, Measure 114 will require them to create entirely new administrative processes under their current budgets—and they already have little funding for staffing to develop these processes, which nonsensically overlap with Oregon's already strict background check system.[7]

    D. **Implementation of Measure 114 Injures State Conservation Programs.**

---

[7] *E.g.*, Statement of OSSA President Sheriff Nelson (Deschutes County) regarding Measure 114, available at https://oregonsheriffs.org/blog/ossa-and-measure-114/ (noting that "Measure 114 will require local law enforcement agencies to create and fund a firearm permit process out of local budgets. It will move very scarce law enforcement resources away from protecting our communities to doing backgrounds and issuing permits … It has been conservatively estimated [by OSSA] that this measure will cost local agencies just over $49 million annually, with expected permit fees covering only $19 and a half million … [which will] require [local governments] to shift [resources] from law enforcement priorities to fund these permit programs.").

Page 10 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON 97702

The additive restrictions in Measure 114 will reduce firearm, firearm accessory, and ammunition purchases in Oregon. They are also likely to reduce participation in hunting and recreational shooting. These reductions will have deleterious effects on the conservation of wildlife and habitat in the State.

First, Oregon's hunters and recreational shooters contribute tens of millions of dollars for conservation efforts under the Pittman-Robertson Act (the "Act"). The Act imposes an 11% excise tax on every purchase of firearms, ammunition, and hunting equipment. Under the Act, the U.S. Fish and Wildlife Service ("Service") distributes excise tax revenues based on a formula using the state's land and water area and the number of paid recreational hunting and fishing license holders in the state. Grant funds are used for projects to restore, conserve, manage, and enhance wild birds and mammals and their habitats. In 2023, the Service distributed a record $1.6 billion in Pittman-Robertson Act and related funds, including over $28 million in wildlife restoration and hunter education grants to the Oregon Department of Fish and Wildlife ("ODFW").[8] Reducing firearm sales and making it more difficult to hunt (thus potentially cutting license sales) will decrease this critical funding for the ODFW and harm Oregon's wildlife, habitat, and conservation efforts because the Department will have fewer resources to invest.

Fewer hunters will also negatively impact ODFW's wildlife management efforts. In addition to the direct reduction of funds available to ODFW for wildlife management programs caused by a reduction in hunting licenses sold, hunting is used in Oregon (and around the U.S.) as

---

[8] U.S. Dep't of the Interior, Press Release, *Over $1.6 Billion Will Support State Fish and Wildlife Conservation and Outdoor Access* (Mar. 3, 2023), available at https://www.fws.gov/press-release/2023-03/over-16-billion-will-support-conservation-agencies-and-outdoor-access; additional information on state grants available at https://partnerwithapayer.org/funding-sources/; *see also* Pittman-Robertson Act, 16 U.S.C. § 669 *et seq.*; 26 U.S.C. §§ 4161(b) & 4181; *Sierra Club v. U.S. Fish & Wildlife Serv.*, 189 F. Supp. 2d 684, 691 (W.D. Mich. 2002).

Page 11 -   AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

a cost-effective and necessary wildlife management tool. For abundant or increasing populations of many species, such as deer and black bear, hunting is the only practical or available tool for managing population numbers. Forcing a decline in hunter participation will reduce ODFW's ability to rely on hunters to manage wildlife populations, thus requiring greater direct management and expenditure of resources by ODFW.

## **CONCLUSION**

For these reasons, the Coalition respectfully requests that this Court grant Plaintiffs' relief and hold that Measure 114 violates the Second Amendment to the U.S. Constitution and declare that Measure 114 is invalid and unenforceable.

Respectfully Submitted,

DATED this 30th day of May 2023

LYNCH MURPHY MCLANE LLP

*/s/ Michael R. McLane*
Michael R. McLane, OSB No. 904435
1000 SW Disk Dr.
Bend, OR 97702
(541) 383-5857
mmclane@lynchmurphy.com
*Attorneys for Amicus Curiae*

WAND LEGAL LLC

*/s/ Matthew A. Wand*
Matthew A. Wand, OSB No. 004189
1000 SW Disk Dr.
Bend, OR 97702
(541) 383-5857
matt@wandlegal.com
*Attorneys for Amicus Curiae*

SAFARI CLUB INTERNATIONAL
Regina Lennox
501 2nd Street NE
Washington, DC 20002

Page 12 -    AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON 97702

          (202) 543-8733
          rlennox@safariclub.org
          *Pro Hac Vice Attorney for Amicus Curi*
          *Safari Club International*

Page 13 -   AMICUS BRIEF OF SPORTSMEN'S AND WOMEN'S COALITION

## CERTIFICATE OF SERVICE

In accordance with Fed. R. Civ. P. 5(b)(2)(E) and LR5-1, I hereby certify that on May 30, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

DATED this 30th day of May 2023.

LYNCH MURPHY MCLANE LLP

*/s/ Michael R. McLane*
Michael R McLane, OSB No. 904435
1000 SW Disk Dr
Bend, OR 97702
(541) 383-5857
mmclane@lynchmurphy.com

*Attorneys for Amicus*

WAND LEGAL LLC

*/s/ Matthew A. Wand*
Matthew A Wand, OSB No. 004189
1000 SW Disk Dr
Bend, OR 97702
(541) 383-5857
matt@wandlegal.com

*Attorneys for Amicus*

SAFARI CLUB INTERNATIONAL

Regina Lennox
501 2nd Street NE
Washington, DC 20002
(202) 543-8733
rlennox@safariclub.org

*Pro Hac Vice Attorney for Amicus Curiae*
*Safari Club International*

Page 1 -    CERTIFICATE OF SERVICE