**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Hannah K. Hoffman, OSB #183641**
HannahHoffman@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
(503) 295-3085

      Special Assistant Attorneys General for Defendants

**Ellen F. Rosenblum, OSB #753239**
Attorney General
**Brian Simmonds Marshall, OSB #196129**
Senior Assistant Attorney General
Brian.S.Marshall@doj.state.or.us
**DEPARTMENT OF JUSTICE**
100 SW Market Street
Portland, OR 97201
(971) 673-1880

      Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>TINA KOTEK, et al.,<br><br>               Defendants,<br><br>    and | Case No. 2:22-cv-01815-IM (lead case)<br>       3:22-cv-01859-IM (trailing case)<br>       3:22-cv-01862-IM (trailing case)<br>       3:22-cv-01869-IM (trailing case)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF ON LEGISLATIVE FACTS** |

**Page 1 -  DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF ON LEGISLATIVE FACTS**

OREGON ALLIANCE FOR GUN SAFETY,

                                    Intervenor-Defendant.

MARK FITZ, et al.,

                                    Plaintiffs,

            v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants.

KATERINA B. EYRE, et al.,

                                    Plaintiffs,

            v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants,

            and

OREGON ALLIANCE FOR GUN SAFETY,

                                    Intervenor-Defendant

DANIEL AZZOPARDI, et al.,

                                    Plaintiffs,

            v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants.

Plaintiffs seek to offer Dr. William English's report of a survey, as well as testimony based on that survey, to establish that Measure 114 "regulates activity falling" within the scope of the Second Amendment "as originally understood." *N. Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022) (cleaned up).  As such, plaintiffs' proffered evidence is

adjudicative, not legislative.  Accordingly, this Court should apply the Federal Rules of Evidence to determine whether the survey is admissible evidence.  The same is true for other exhibits that plaintiffs present to evince essential elements of the Second Amendment claims at issue, including the burdens and justifications of historical firearms regulations.

Plaintiffs ask the Court to forego the protections of the Federal Rules of Evidence.  (Pls.' Supp. Br. of Legislative Facts (ECF 223) at 4.)  Indeed, plaintiffs argue that the Court can even "investigate these matters itself" and "rely of sources put forward . . . by *no* party."  (*Id.* (emphasis in original).)  But the *Bruen* Court expressly advised lower courts to "rel[y] on 'various evidentiary principles and default rules' to resolve uncertainties," buttressed by "the principle of party presentation" whereby courts "decide a case based on the historical record *compiled by the parties*."  *Bruen*, 142 S. Ct. at 2130 n.6 (2022) (quoting W. Baude & S. Sachs, *Originalism and the Law of the Past*, 37 L. & Hist. Rev. 809, 810–811 (2019) (emphasis added)).  This Court should follow *Bruen* and rely on admissible evidence to determine whether Measure 114 is constitutional.

I.    **Plaintiffs' proffered facts are adjudicative, not legislative facts, because they are intended to challenge evidence that defendants will place in the record.**

Whether a fact is adjudicative or legislative does not depend on the nature of the fact, but rather on the nature of its intended use.  *See United States v. Bello*, 194 F.3d 18, 22 (1st Cir. 1999).  The same fact can play either role depending on context.  *Bello*, 194 F.3d at 22.  As one commenter has noted, there is often overlap between adjudicative and legislative facts and slight differences in the nature of the point being noticed or the way in which it is used can place the fact in one category or the other.  Mueller & Kirkpatrick, Federal Evidence, § 2:14 (4th ed. 2013).

Facts that are used to establish an element of a claim are adjudicative facts.  *See Oriental Financial Grp. v. Cooperativa de Ahorro y Crédito*, 832 F.3d 15, 26-27 (5th Cir. 2016) (in trademark case, facts that tended to prove or disprove public perception were adjudicative facts). Accordingly, to the extent that information is used to establish or contest a fact at issue in a case, it is an adjudicative fact.  *Perry v. Brown*, 671 F.3d 1052, 1075 (9th Cir. 2012), *vacated sub nom. Hollingsworth v. Perry*, 570 U.S. 693 (2013) (in case considering whether voters' enactment of same-sex marriage ban was motivated by animus, facts concerning the nature of the messages communicated by the measure's sponsors to voters were adjudicative facts).  Judicial notice of adjudicative facts is subject to the strictures of Federal Rule of Evidence 201, including that the fact "cannot reasonably be questioned"; legislative facts are not.

One way to distinguish whether a fact is to be used for an adjudicative or legislative purpose is to consider whether the fact is to be used to answer a question that is reserved for the factfinder.  Mueller & Kirkpatrick, Federal Evidence, § 2:14.  Under *Bruen*, this Court must determine whether restrictions on large-capacity magazines ("LCMs") "are consistent with the Second Amendment's text and historical understanding."  *Bruen*, 142 S. Ct. at 2131.  o do so, the Supreme Court directed district courts to resolve those questions by relying on evidence furnished by the parties pursuant to evidentiary principles and default rules that are inherent in the adversarial system of adjudication.  *Id.* at 2130 n.6.  Thus, to the extent that a party presents evidence to establish that LCMs are "commonly used firearms for self-defense," *id.* at 2138, that evidence is properly characterized as adjudicative, not legislative.

The facts that plaintiffs seek to place before the Court are expressly intended to serve that purpose.  Plaintiffs seek to persuade the Court that LCMs are commonly used for lawful self-defense purposes by invoking an unsubstantiated, untested survey that, as discussed below, is

considered unreliable by one of their own experts.  Rather than subjecting the individual behind

this survey to the regular evidentiary process—whereby his credibility and the accuracy of his

research would be subjected to inquiry and challenged by defendants—plaintiffs seek to

transform the untested survey into an unvarnished authority simply by characterizing it as

legislative fact.

In arguing to the contrary, plaintiffs ignore *Bruen* itself.  Plaintiffs accurately note that

the Court directed district courts "to decide a case based on the historical record compiled by the

parties."  (ECF 223 at 7 (quoting *Bruen*, 142 S. Ct. at 2130 n.6)).  But plaintiffs then elide *how*

the Supreme Court instructed district courts to do so in the two preceding sentences.  As noted

above, *Bruen* instructs courts to construct a historical record just like any other factual record in

our adversarial system of adjudication—by following standard evidentiary principles, rules, and

practices.  *Bruen*, 142 S. Ct. at 2130 n.6.

The *Bruen* Court further cited to a law review article, *id.*, that explains why that is so:

Similar to an antitrust or toxic-tort case, district courts are best suited to resolve any factual

uncertainty in the requisite historical inquiry under the Second Amendment by using

longstanding evidentiary rules and principles.  Baude & Sachs, 37 L. & Hist. Rev. at 810-11,

*available at* https://scholarship.law.duke.edu/faculty_scholarship/3945/ (last visited June 1,

2023).

Significantly, unlike appellate courts, trial courts has the ability to develop an evidentiary

record upon which to find facts that support their reasoning and legal conclusions.  As another

court considering a Second Amendment challenge observed:

> Both parties have retained expert historians to inform the Court's factfinding. The
> curricula vitae ("CVs") of some of the experts are before the Court as are their writings
> directed at pivotal factual disputes, and both parties have submitted additional helpful
> exhibits. While this Court professes no independent scholarly historical knowledge, it

does have solid experience in resolving disputes between experts. Parties, in both civil and criminal cases, routinely rely on expertise in topics well beyond the ken of any particular factfinder to decide contested issues of fact. For example, does a criminal defendant have a mental disorder that is sufficient to excuse her from criminal responsibility? Was a steel slab made defectively and did that defect cause it to give way? Did a product infringe on a pre-existing patent by employing the same basic design? Without any expertise in psychiatry, metallurgy, or industrial design, courts regularly resolve factual disputes between expert witnesses, and they do so relying on tried-and-true, conventional considerations related to credibility and reliability.

*Ocean State Tactical, LLC v. State of Rhode Island*, No. 22-CV-246 JJM-PAS, 2022 WL 17721175, at *6–7 (D.R.I. Dec. 14, 2022).

In any event, plaintiffs cannot simply evade evidentiary standards by characterizing facts that they wish the Court to consider as "legislative facts." As another district court observed when it held a trial to find legislative facts, "there are instances when access to the pertinent data is most appropriately received through live testimony presented by the parties" because doing so lessens "the risk of a poor decision by denying itself whatever help on the facts it can with propriety obtain." *O'Hanlon v. Hartford Acc. & Indem. Co.*, 457 F. Supp. 961, 963 (D. Del. 1978), *aff'd*, 639 F.2d 1019 (3d Cir. 1981) (quotation marks and citation omitted).

## II.   To the extent that plaintiffs are permitted to submit legislative facts, the appropriate mechanism for them to do so is in briefing, not as part of the evidentiary record.

Even if the Court considers certain information "legislative facts," it should only do so outside of the evidentiary record. The purpose of the evidentiary rules is to aid the search for truth. *Bailey v. Kawasaki-Kisen, K.K.*, 455 F.2d 392, 397 (5th Cir. 1972) (internal quotation marks and citations omitted). Information that cannot meet evidentiary standards should not be admitted as evidence. If plaintiffs wish to submit truly legislative facts for the Court's consideration of how it should interpret legal questions like the Second Amendment standard under *Bruen*, the rules of evidence do not prevent them from doing so through briefing. *See Daggett v. Commission on Governmental Ethics and Election Practices*, 172 F.3d 104, 112 (1st

Cir. 1999) (noting that legislative facts are usually placed before the court "by material set forth in the briefs").

Notably, plaintiffs have had myriad opportunities to submit alleged legislative facts to the Court and the Court should thus refuse to admit the survey evidence at this late juncture.  The parties have engaged in, with three rounds of substantive briefing to date concerning plaintiffs' motions for a temporary restraining order and preliminary injunction, as well as plaintiffs' trial brief.  This Court should refuse to admit the survey evidence that plaintiffs seek to offer. Discovery has been ongoing in this case for over six months.  Plaintiffs now seek to submit Dr. English's report through Mark Hanish, a firearms sales executive, rather than retain Dr. English, despite relying on Dr. English's survey as substantive evidence of how large capacity magazines are used for self-defense.    Furthermore, Pplaintiffs also removed from their witness list another of their retained experts—Dr. Gary Kleck—who testified at deposition that the English survey was unreliable.  ECF 175-7 at 13 (Depo Tr. 76:5 to 77:11).

**III.    Plaintiffs' cases are largely distinguishable.**

Although plaintiffs assert that cases making constitutional decisions based on "legislative facts" are "legion," few of plaintiffs' cases so hold.  Plaintiffs, for example, quote from the *dissent* in *Landell v. Sorell*, 382 F.3d 91 (2d Cir. 2004), *rev'd and rem'd sub nom. Randall v. Sorrell*, 548 US 230 (2006), without noting that the majority remanded the case for "further fact-finding on an aspect of the narrow tailoring inquiry." *Id.* at 97.  In *Metz v. Leininger*, 57 F.3d 618 (7th Cir. 1995), the Court noted that constitutional decisions are "typically" decided with legislative facts, but affirmed in part because the State had failed to make "a showing of fact" that was necessary to render judgment. *Id.* at 622.  Another cited case, *Association of National Advertisers, Inc. v. Federal Trade Commission*, 627 F.2d 1151, 1154 (D.C. Cir. 1979), involved a challenge to a rulemaking proceeding, not a constitutional question.  And the Second

Amendment cases plaintiffs cite—all of which pre-date *Bruen*—did not have the benefit of the

Court's directive in *Bruen* that lower courts "follow the principle of party presentation" and rely

on "various evidentiary principles and default rules to resolve uncertainties."  *Bruen*, 142 S. Ct.

at 2130 n.6 (cleaned up).

DATED: June 1, 2023.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:    *s/ Harry B. Wilson*

Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Hannah K. Hoffman, OSB #183641
HannahHoffman@MarkowitzHerbold.com
*Special Assistant Attorneys General for
Defendants*

Brian Simmonds Marshall, OSB #196129
brian.s.marshall@doj.state.or.us
*Of Attorney for Defendants*

2005177